UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CARL G. NETTLES, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 4:19 CV 152 CDP |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM & ORDER

This matter is before the Court on movant Carl G. Nettles' motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, along with numerous other motions he has filed.   Nettles pleaded guilty to conspiracy to distribute actual methamphetamine and possession of a short-barreled shotgun in furtherance of a drug crime.  Case No. 4:17CR536 CDP (Crim.).  In his plea agreement the parties agreed to jointly recommend a sentence of 180 months, which was the mandatory minimum sentence, and I followed that recommendation.  Nettles now claims that—despite his sworn statements under oath—he is actually innocent of the firearm charge.  For the reasons that follow, I will deny the motion to vacate and the other motions, as all are without merit.

**Relevant Background**

In 2014, Missouri State Highway Patrol surveilled Nettles and two others travelling between Kansas City and St. Louis as part of an ongoing drug trafficking investigation.  Officers arrested Nettles after a traffic stop and seized a small amount of meth from him.  However, officers seized 925 grams of meth from his co-conspirators driving a separate car. A month later, officers executed a search warrant at Nettles' residence and seized several items, including meth and a short-barrel shotgun.

Nettles was charged along with his two co-conspirators.  In Count I, all three were charged with conspiracy to distribute more than fifty grams of actual methamphetamine.  Nettles was charged in Count II with being a felon in possession of a firearm, and in Count III with knowingly possessing a short-barreled shotgun in furtherance of the drug conspiracy listed in Count I.  Under the plea agreement he signed, Nettles pleaded to a lesser included offense in Count I and to Count III.  Count II was dismissed by the government.  The agreement also included a waiver of appeal and a waiver of post-conviction rights.  The parties agreed to certain sentencing guidelines calculations and to jointly recommend a sentence of 180 months.  At the guilty plea hearing, Nettles affirmed, under oath, that he understood the written agreement, that his counsel had not failed or refused

to do anything he requested, and that he was, in fact, guilty of the crimes.  He

specifically agreed that he "possessed the firearm in connection with the drug

offenses."  (Crim. ECF 138 p. 136).

In January of 2019, Nettles moved to vacate his sentence.  His motion lists

only two grounds for relief, but each of those grounds encompasses several issues,

as do the various letters and motions he has filed since.  The grounds stated are:

> GROUND ONE: actual-innocence of possession of a firearm in
> furtherance of a drug trafficking crime; as I.A.C. trial counsel and
> prosecutorial misconduct, violating due process under U.S. Const.
> Amend. 4, 5, 6 and 14.

(ECF 1 at p. 5).

> GROUND TWO: Denial of right to a speedy trial, due process of law
> under 18 U.S.C. § 3161; 18 USC App. 2 § 2, Art. III(a), IV(c);
> Interstate Agreement on Detainers Act, Anti-Shuttle section, under
> U.S. Const. Amend. 4, 5, 6, and 14.

(ECF # 1 at p. 8).  Liberally construing his filings, Nettles appears to argue:

- he is actually innocent of Count III because the gun belonged to his son, Carl
  Kelley;

- his Fourth Amendment rights were violated because law enforcement
  officers seized the gun from Kelley's room;

- his right to a speedy trial under the Speedy Trial Act, 18 U.S.C. §
  3161(c)(1), and the Interstate Agreement on Detainers (IAD), 18 U.S.C.
  App. 2 § 2 art. III(a) and IV(c), were violated because his guilty plea was not
  entered in a timely fashion;

- his right under the "anti-shuttling" provision of the IAD, 18 U.S.C. App. 2
  § 2 Art. IV(e), was violated because he was transferred from federal custody
  back to state custody on January 4, 2018, before he pleaded guilty;

- his trial counsel was ineffective for failing to move to suppress the shotgun seized from his residence and to move to dismiss for the violations of his rights under the Speedy Trial Act and IAD;

- the prosecution engaged in misconduct when it failed to inform the court of various violations of Nettles' rights; and

- the prosecution presented false evidence in furtherance of a malicious prosecution.

## Discussion

### A. Nettles Waived His Fourth Amendment, Speedy Trial, and IAD Claims

Nettles' plea agreement contained an explicit waiver of post-conviction relief except for claims of ineffective assistance of counsel or prosecutorial misconduct.  It is well established that such a waiver is enforceable, so long as it is made knowingly and voluntarily and its enforcement does not result in a miscarriage of justice. *United States v. Andis*, 333 F.3d 886, 891 (8th Cir. 2003). *See also DeRoo v. United States*, 223 F.3d 919, 923 (8th Cir. 2000).  Nettles argues that enforcing the waiver will result in a miscarriage of justice because he is actually innocent of Count III.[1]  To support his argument, he offers three unsworn

---

[1] Although not raised in his § 2255 motion, Nettles appears to argue in his subsequent motions that his plea was coerced by "threats from prosecution to recommend a more stringent sentence[]" if Petitioner did not cop a plea to the firearms charge."  (ECF 7).  However, "[t]hese alleged threats are accurate statements of what the prosecutor might have done if [Nettles] had gone to trial." *Nguyen v. United States*, 114 F.3d 699, 704 (8th Cir. 1997).  While they may have discouraged Nettles from asserting his trial rights, "the imposition of these choices is an inevitable—and permissible—attribute of any legitimate system which tolerates and encourages the negotiation of pleas." *Id.* (internal quotations omitted).  Moreover, Nettles' claims are directly contradicted by his statements under oath at the guilty plea hearing.  When asked

- 4 -

letters purportedly written by Carl Kelley, Kelley's mother, and Kelley's grandmother.  They claim that Kelley and his mother lived with Nettles, that Kelley's grandmother gave Kelley the short-barreled shotgun that was seized from Nettles' residence, and that Kelley stored the shotgun in his room without Nettles' knowledge.  All of these statements contradict what Nettles said at his guilty plea hearing.

Claims of actual innocence may fall into the narrow miscarriage of justice exception.  *E.g. McQuiggin v. Perkins*, 569 U.S. 383 (2013). The Supreme Court has not recognized "actual innocence" as a freestanding claim, but as a "gateway" through which a petitioner may raise a defaulted claim.  *Id.*, at 386.  *See also Murray v. Carrier*, 477 U.S. 478, 496 (1986) ("[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default.").

"[T]enable actual-innocence gateway pleas are rare" though.  *McQuiggin*, 569 U.S. at 386.  They must be both "credible" and "compelling."  *Schlup v. Delo*, 513 U.S. 298, 324-25 (1995).  To be considered "credible," the claim must be supported by "new reliable evidence . . . that was not presented at trial."  *Id.*, at

---

whether he was threatened or in any way forced to plead guilty, Nettles responded, "No."  (Crim ECF 138 p. 7).

324.  Evidence is only "new" if it was unavailable at the time of trial and could not have been produced through an exercise of due diligence.  *Kidd v. Norman*, 651 F.3d 947, 953 (8th Cir. 2011).  To be considered "compelling," the movant must demonstrate "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."  *Schlup*, 513 U.S. at 327.

Nettles' allegations are neither "credible" nor "compelling."  Nettles' actual innocence argument relies entirely on three unsworn letters claiming that the gun belonged to Kelley and was found in his room.[2]  Nettles does not explain how information that the shotgun belonged to his son was unavailable to him when he entered his guilty plea, nor how testimony from his family could not have been procured through an exercise of due diligence.  Thus, the evidence on which Nettles relies is not "new" for the purpose of bringing an actual innocence claim in this Court.

The evidence is not compelling either.  It is directly contradicted by Nettles' sworn statements in court.  At the change of plea hearing, Nettles agreed he

---

[2] In his Motion for Leave to Supplement Petitioner's Pending Motion Under 28 U.S.C. § 2255, Nettles also argues that, like the petitioner in *Rehaif v. United States*, 130. S.Ct. 2191 (2019), he lacked "knowledge of his prohibited status and therefore lacked the requisite intent to 'knowingly' possess the shotgun in question . . . ." (ECF 15).  But *Rehaif* dealt with 18 U.S.C. §§ 922(g) and 924(a)(2), not § 924(c), and knowledge of prohibited status is not an element of a violation of § 924(c). To the extent that Nettles also argues that he never "knowingly" possessed the shotgun, his argument is conclusively refuted by the plea colloquy and his plea agreement.

"possessed that shotgun in furtherance of the drug trafficking crime."  (Crim. ECF 138, p. 16).  He also confirmed that, to the best of his knowledge, everything in his plea agreement was true.  In that agreement, he acknowledged he used the short-barreled shotgun in furtherance of the conspiracy to distribute actual methamphetamine.   "Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).  And the letters Nettles offers do not overcome that presumption. *Id.* ("The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.").

Because Nettles has not shown "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence," no miscarriage of justice will result if I enforce the waiver and summarily dismiss his Fourth Amendment, Speedy Trial, and Interstate Agreement on Detainers claims as waived. *Schlup*, 513 U.S. at 327.

## B. Nettles Did Not Receive Ineffective of Counsel

Nettles attempts to circumvent his waiver by claiming that his counsel was ineffective for failing to bring his waived claims.  His ineffective assistance of

counsel claims are directly contradicted by his statements at the change of plea

hearing.[3]

Claims of ineffective assistance of counsel are governed by the two-part test

set out in *Strickland v. Washington*, 466 U.S. 668 (1984).  To prevail on these

claims, Nettles must show that (1) his attorney's performance "fell below an

objective standard of reasonableness," and (2) "there is a reasonable probability

that, but for counsel's errors, he would not have [pleaded] guilty and would have

insisted on going to trial."  *Tinajero-Ortiz v. United States*, 635 F.3d 1100, 1103

(8th Cir. 2011) (internal quotations omitted).  I need not address both components

if Nettles makes an insufficient showing on one of the prongs.  *Engelen v. United

States*, 68 F.3d 238, 241 (8th Cir. 1995).  Because Nettles fails to show any

prejudice, I will deny all of Nettles' ineffective assistance of counsel claims.

   *1. Fourth Amendment Claim*

Nettles argues that the execution of the search warrant violated the Fourth

Amendment because law enforcement officers exceeded the scope of the search

---

[3] When I asked Nettles whether he was satisfied with counsel, he repeatedly responded that he was:
COURT: "Have you had enough time to discuss your case with [counsel]?"
NETTLES: "Yes."
COURT: "Are you satisfied with her representation of you?"
NETTLES: "Yes."
COURT: "Is there anything that you've wanted her to do in representing you in this case that she's failed or refused to do?"
NETTLES: "No."  (Crim. ECF 138 p. 5).

warrant and illegally seized the shotgun from Kelley's room.  Thus, he says his

counsel was ineffective for refusing to move to suppress the shotgun.  As

explained above, Nettles offers meager support for his allegations, and they are

directly contradicted by his statements at the change of plea hearing.  Nettles also

fails to adequately allege that he would have insisted on going to trial had his

counsel made the motion.

Even accepting Nettles' claim that the shotgun was seized from Kelley's

"private dwelling area", Nettles cannot show that he was prejudiced by his

counsel's purported refusal because a motion to suppress would have been

fruitless.  (ECF 1 p. 5).  "Fourth Amendment rights are personal rights that may

not be asserted vicariously."  *United States v. Barragan*, 379 F.3d 524, 529 (8th

Cir. 2004) (citing *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978)).  Therefore, a

person seeking suppression of evidence on the basis of a Fourth Amendment

violation " 'must demonstrate that he personally has an expectation of privacy in

the place searched, and that his expectation is reasonable[.]' " *Id.* (quoting

*Minnesota v. Carter*, 525 U.S. 83, 88 (1998)).  By claiming that the gun was seized

from his son's room, to which he had no access, he shows that he did not have a

reasonable expectation of privacy there.  "A person who is aggrieved by an illegal

search and seizure only through the introduction of damaging evidence secured by

a search of a third person's premises or property has not had any of his Fourth

Amendment rights infringed." *Rakas*, 439 U.S. at 134.  Therefore, any motion to suppress based on a violation of Nettles' Fourth Amendment rights would have been unsuccessful, and Nettles cannot show that he was prejudiced by his counsel's conduct.

### 2.  *Speedy Trial Claims*

Likewise, counsel was not ineffective for failing to move for dismissal based on violations of Nettles' speedy trial rights.  Construing his motion liberally, Nettles argues that his counsel should have moved to dismiss his indictment because his guilty plea was not entered within the timeframes required by the Speedy Trial Act and the IAD.  Not only does Nettles inadequately allege prejudice—he merely concludes that he was prejudiced by "trial counsel's failure to . . . brin[g] the case timely to this Court"—but he also fails to show that any such motions would have been successful on the merits.  (ECF 1 p. 9).

The Speedy Trial Act requires that a federal criminal defendant be tried within 70 days of the filing date of his indictment or arraignment, whichever comes later.  18 U.S.C. § 3161(c)(1).  Delays from certain events are excluded from this 70-day period.  A "delay resulting from a continuance" is excluded if the court determines "that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." *Id.* § 3161(h)(7)(A).  The court must explain the reasons for its determination and

consider certain factors, including "[w]hether the failure to grant such a continuance . . . would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence." *Id.* § 3161(h)(7)(B)(iv).  Other delays, such as "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court," are automatically excluded.  *Id.* § 3161(h)(1)(H).

Similarly, "[t]he IAD provides that when a defendant is in custody and indicted in another jurisdiction for an offense that causes a detainer to be placed on him, the other offense must be tried within 180 days of the prisoner's written request for disposition or within 120 days of his arrival in the receiving jurisdiction."  *United States v. McKay*, 431 F.3d 1085, 1091 (8th Cir. 2005). (internal citations omitted).  The IAD requires a less specific showing for excludable delay than the Speedy Trial Act: the court may "grant any necessary or reasonable continuance" for "good cause shown in open court."  18 U.S.C. App. 2 § 2 art. III(a) & IV(c).

Nettles entered his guilty plea on July 30, 2018—257 days after his demand for a speedy trial on November 28, 2017, and 236 days after his initial appearance on December 6, 2017.  But repeated delays caused by his motions for extensions of time tolled each "clock" under the Speedy Trial Act and the IAD.  On December

13, 2017, seven days after his initial appearance, the Court granted Nettles an extension of time to file pretrial motions until January 10, 2018.  After his first extension of time expired, Nettles made six consecutive motions for extensions of time to file pretrial motions that tolled each clock until June 21, 2018, when he waived his right to file pretrial motions.[4]  On each occasion, the Court agreed that "to deny Defendant's request for such additional time would deny counsel for Defendant the reasonable time necessary for an effective investigation and preparation of pretrial motions, taking into account the exercise of due diligence," and that "the ends of justice served by granting Defendant's request for additional time outweigh the best interest of the public and Defendant in a speedy trial," as required by § 3161(h)(7)(A) and the IAD.[5]

When excluding delay caused by Nettles' motions alone, only 53 countable days elapsed between Nettles' initial appearance on December 6, 2017 and his guilty plea on July 30, 2018: seven days between his initial appearance and his first

---

[4] There were three gaps between the expiration of one extension of time and Nettles' request for a new extension of time.  Two days elapsed between the expiration of Nettles' second extension of time to file pretrial motions on March 5, 2018 (Crim. ECF 53) and his Third Motion for Extension of Time to File Pretrial Motions on March 7, 2018 (Crim. ECF 54). Four days elapsed between the expiration of his third extension of time to file pretrial motions on April 5, 2018 (Crim. ECF 64) and his Fourth Motion on April 9, 2018 (Crim. ECF 69). And one day elapsed between the expiration of his fourth extension of time to file pretrial motions on May 7, 2018 (Crim. ECF 70) and his Fifth Motion on May 8, 2018 (Crim. ECF 75).  These gaps total seven days.

[5] Crim. ECF 46, 53, 64, 70, 77, 95.

motion for extension of time on December 13, 2017, seven days between the expiration of one extension of time and Nettles' next request for an extension of time, and 39 days between Nettles' waiver of his right to file pretrial motions on June 21, 2018 and his guilty plea.  Likewise, only 61 days elapsed between Nettles' demand for a speedy trial under the IAD and his guilty plea.  Thus, entrance of Nettles' guilty plea complies with both the 70-day requirement of the Speedy Trial Act and the 120 and 180-day requirements of the IAD, and Nettles was not prejudiced by his counsel's failure to move to dismiss.

### 3.  IAD Anti-Shuttling Claim

Finally, Nettles argues that his counsel was ineffective for failing to move to dismiss his indictment based on a violation of the anti-shuttling provision of the IAD.  Article IV(e) of the IAD requires a court to dismiss any indictment, information, or complaint when a prisoner has not been brought to trial in a receiving state before being returned to the original sending state.  18 U.S.C. App. 2 § 2.  Nettles argues that his counsel should have moved to dismiss the indictment because he was transferred from federal custody to his original place of imprisonment on January 4, 2018, several months before his guilty plea.  However, Nettles omits that he requested to be returned state custody and specifically waived "any right or claim which he[] may or might otherwise have under the prisons of

Section 2, Article IV(e) of [the IAD]."  (ECF 23-2).[6]  A defendant may waive his

protections under the anti-shuttling provision of the IAD.  *See State v. Vinson*, 182

S.W.3d 709, 712 (Mo. Ct. App. 2006); *New York v. Hill*, 528 U.S. 110, 114-15

(2000).  Therefore, any motion to dismiss based on Article IV(e) would have been

unsuccessful, and defense counsel did not provide ineffective assistance by failing

to seek dismissal on this basis.

### C. The Prosecution Did Not Engage in Misconduct

Nettles alleges repeated prosecutorial misconduct.  He claims that the

Government failed to inform the Court of repeated violations of his rights and

coerced his guilty plea.  As explained above, there is no evidence that any violation

of his rights occurred, and the alleged threats do not constitute coercion.  Nettles

also argues the Government made knowingly false allegations that Nettles

possessed the shotgun in furtherance of a drug trafficking crime, but his claims are

unsupported and internally inconsistent.  More importantly, they are contradicted

by his own sworn statements that he knowingly possessed the shotgun.

### Nettles' Other Motions

I will also deny all of Nettles' other motions.

---

[6] In his Reply Brief, Nettles falsely claims that "[n]o motion for return to MODOC custody was requested by Defense Counsel or Petitioner" and "[t]he return of Petitioner was without notice of his right to remain in Federal Custody or waive the right."  (ECF 9 p. 13).

Nettles moved for a hearing twice.  "A petitioner is entitled to an evidentiary hearing on a section 2255 motion unless the motion and the files and records of the case conclusively show that he is entitled to no relief."  *Anjulo-Lopez v. United States*, 541 F.3d 814, 817 (8th Cir. 2008) (internal quotation marks omitted).  "No hearing is required, however, where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which is based."  *Id.* (internal quotation marks and citations omitted).  The record conclusively refutes Nettles' claims, so I will not hold an evidentiary hearing.

I will deny Nettles' motion for leave to conduct discovery.  Rule 6(a) of the Rules Governing Section 2255 Proceedings provides that I may grant leave to conduct discovery when a party shows good cause.  Nettles has not done so here.  Further, because Nettles did not have leave of Court to conduct discovery, the government was not obligated to respond to his purported Rule 36 requests for admission.

Nettles also moves the Court to "grant enlargement on bail with a no cash bond requirement, pending the outcome of the current litigation under 2255." (ECF 12). However, 18 U.S.C. § 3143 does not apply to convictions challenged by collateral attack.  *Redzic v. United States*, No. 1-11-CV-00133 ERW, 2011 WL 5827798, at *1 (E.D. Mo. Nov. 18, 2011) ("The problem with Movant's reliance upon § [3143(b)], however is that it applies to defendants who are challenging their

conviction or sentence on direct appeal."). *See also United States v. Mett*, 41 F.3d 1281, 1282 (9th Cir. 1994) (citations omitted) ("The Bail Reform Act does not apply to federal prisoners seeking postconviction relief.").

Nettles also moves the court for leave to supplement his § 2255 motion to argue that he did not know of his prohibited status or admit to knowingly possessing the firearm.  (ECF 15). As explained above, his claim mistakes the relevant law and is conclusively refuted by the record, so I will deny his motion.

Finally, Nettles moves for an order transferring him to home confinement under the First Step Act of 2018, but I already denied this motion in the underlying criminal case. (Crim. ECF 166).

### I Will Not Issue a Certificate of Appealability

As Nettles has not made a substantial showing of the denial of a federal constitutional right, I will not issue a certificate of appealability.  *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (citing *Flieger v. Delo*, 16 F.3d 878, 882-83 (8th Cir. 1994)) (substantial showing must be debatable among reasonable jurists, reasonably subject to a different outcome on appeal or otherwise deserving of further proceedings).

Accordingly,

**IT IS HEREBY ORDERED** that Carl G. Nettles' motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 [1] is denied.

**IT IS FURTHER ORDERED** that Nettles' motion to receive respondent United States of America's response to the Court's show cause order [6], motion for a hearing [7], motion for leave to conduct discovery [8], motion for leave to file his Rule 36 request for admissions as evidence [11], motion for enlargement [12], renewed motion for a hearing [13], motion for leave to supplement petitioner's motion to vacate [15], and emergency petition for relief under the First Step Act [16] are denied.

A separate judgment in accord with this Memorandum and Order is entered this same date.

CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 17th day of December, 2021.